FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2024 AUG 13  A 11: 49

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.  1:24-CR-179-RDA |
| v. | Count 1: 18 U.S.C. § 1343<br>(Wire Fraud) |
| RICK TARIQ RAHIM,<br>a/k/a Tariq Afzal Rahim | *Forfeiture Allegation* |
| *Defendant.* | |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count 1
(Wire Fraud)

### Introductory Allegations

At all times relevant to the Information, unless otherwise stated:

1. Defendant RICK TARIQ RAHIM ("RAHIM") resided in Great Falls, Virginia within the Eastern District of Virginia.

2. TradeAutomation.com LLC ("TradeAutomation") was an entity registered by RAHIM in Virginia on or about October 27, 2021. TradeAutomation was also the trade name for an automated trading bot business that sold subscription-based access to bots represented by RAHIM to be capable of automated trading on customers' behalf. TradeAutomation was operated by RAHIM from Great Falls, Virginia within the Eastern District of Virginia

3. Ian Higgins ("Higgins") was the founder and owner of FX Primary. Higgins incorporated FX Primary in Saint Vincent and the Grenadines on or about October 30, 2020. FX Primary was not registered with the SEC or FINRA.

4. FX Primary was an online trading platform that purported to act as a brokerage house that would "manage" investor deposits, including investor deposits for TradeAutomation.

5. UCC-2 worked with HIGGINS.

6. Cryptocurrency is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency (currency which derives its value from government regulation or law, such as the dollar) to buy goods or services or exchanged for fiat currency or other cryptocurrencies.

<em>The Scheme and Artifice to Defraud</em>

7. From at least in or about September 2021 through at least in or about March 2023, the defendant, RICK TARIQ RAHIM, devised and intended to devise a scheme to defraud others, and to obtain money by materially false fraudulent pretense, representations and promises. It was part of the scheme and artifice to defraud that:

8. RAHIM utilized video-centric internet-based social media tools, primarily TikTok, YouTube, and Discord to post videos and lead online discussions about investing in the stock market, and investing in the cryptocurrency market. RAHIM built a following of hundreds of thousands of followers on social media by promoting himself as an extremely successful, wealthy, and knowledgeable trader.

9. Using his social media presence, RAHIM marketed automated trading bots that he represented would trade automatically on the investors' behalf. One of the lines of bots was offered through TradeAutomation. While a subscription fee was paid for use of the bots, the investors also made the investment through cryptocurrency being deposited with a particular brokerage company. TradeAutomation used FX Primary for its brokerage services.

10. RAHIM made false and material representations to others to induce them to subscribe to TradeAutomation bots and pay RAHIM funds via subscription fees. The false and material representations made included the following:

a. RAHIM falsely represented to others that he fully owned the TradeAutomation software and developed the bots himself, when in fact, RAHIM knew that the algorithm for the TradeAutomation bots was provided by and controlled by Higgins and/or UCC-2, not RAHIM.

b. RAHIM falsely represented to others that he had a longstanding, close relationship with FX Primary, when in fact, RAHIM had known Higgins for fewer than 3 months when RAHIM began publicizing the TradeAutomation bots to the public online.

c. RAHIM falsely represented that the bots had a "proven track record of 2+ years trading millions of dollars profitably," when in fact RAHIM knew that the bots had not been trading for the duration or with the amounts claimed.

d. With Higgins's knowledge and direction, RAHIM posted false statistics regarding the performance of the TradeAutomation bots.

11. RAHIM pushed for TradeAutomation and FX Primary to launch quickly and for FX Primary to begin taking investment money because he had a number of clients lined up ready to invest.

12. Investors made their investment with TradeAutomation by making cryptocurrency deposits with FX Primary, which as the brokerage house would "manage" the deposits. After signing up for a monthly subscription with TradeAutomation, investors would fund the investment by sending cryptocurrency to FX Primary. RAHIM gave them instructions to link the trading bots between FX Primary and a website RAHIM oversaw. RAHIM led investors to believe

that the trading bots were then supposed to automatically operate without any input from the customers. FX Primary collected a fee every time a position was bought or sold, regardless of whether the trade was profitable. RAHIM did not collect investment funds or fees on trades, but did collect the monthly subscription fee he charged.

13. In March 2022, investors incurred significant losses. When some investors sought to withdraw their funds, they encountered delays and difficulties. Some investors contacted RAHIM and others reached out to FX Primary. RAHIM at times directed his employees to tell his customers to view his Discord updates. RAHIM became aware that Higgins required proof that customers were the investors who had made the deposits (claiming to apply "know your customer" ("KYC") practices that had not been employed when investors made the deposits or test withdrawals) and, as a result of the new KYC process, many customers' request to withdraw funds were delayed and/or denied.

14. On or about October 12, 2021, in the Eastern District of Virginia and elsewhere, defendant

**RICK TARIQ RAHIM**

for the purpose of the executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the follow writings, signs, signals and sounds: a wire communication uploading a video regarding TradeAutomation bots to TikTok.

(All in violation of Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE NOTICE

Pursuant to Federal Rule of Criminal Procedure 32.2(a), defendant **RICK TARIQ RAHIM** ("RAHIM") is hereby notified that upon conviction of the offense alleged in Count 1 of the Criminal Information, RAHIM shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the offense.

Pursuant to 21 U.S.C. § 853(p), RAHIM shall forfeit substitute property, if, by any act or omission of RAHIM, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c) and Rule 32.2(a), Federal Rules of Criminal Procedure.)

JESSICA D. ABER
UNITED STATES ATTORNEY

_____
Kimberly M. Shartar
Kenneth R. Simon, Jr.
Assistant United States Attorneys